IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 02-02887(ESL) |
| REDONDO CONSTRUCTION CORPORATION<br>    Debtor | CHAPTER 11 |
| REDONDO CONSTRUCTION CORPORATION<br>    Plaintiff | ADV. PROC. NO. 03-00192 (ESL)<br>ADV. PROC. NO. 03-00194 (ESL)<br>ADV. PROC. NO. 03-00195 (ESL) |
| vs. | |
| PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY<br>    Defendant | |

OPINION AND ORDER

This case is before the court upon the *Judgment & Mandate* issued by the United States Court of Appeals for the First Circuit ("First Circuit") in <u>Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo)</u>, 678 F.3d115 (1st Cir. 2012), remanding the instant casesto the U.S. District Court for the District of Puerto Rico ("District Court") and the *Mandate* by the District Court remanding the case to the U.S. Bankruptcy Court for the District of Puerto Rico for further proceedings consistent with the First Circuit's instructions to: (1) recalculate the award for extended overhead damages; (2) determine whether an award of pre-judgment interest is appropriate; and, if so, (3) the basis for the award, the applicable rate of interest, and the periods of accrual. Both parties filed briefs in support of their respective positions.

Procedural Background

On December 23, 2003, Redondo Construction Corporation ("Redondo") filed a *Complaint* (Docket No. 1)[1] seeking collection of monies plus interest and attorneys' fees against the Puerto Rico Highway and Transportation Authority ("PRHTA").

---

[1] All docket references are made to the ones in Adversary Proceeding No. 03-00192 since all entries in the other two adversary proceedings are basically the same documents, if not *verbatim* the same. Moreover, the captions in

-1-

On August 31, 2009, Hon. Judge Gerardo A. Carlo entered a *Decision and Order* (Docket No. 159)[2] ruling that PRHTA had explicitly consented to have the bankruptcy court enter a final order and judgment and proceeded to enter a final judgment directing the PRHTA to compensate Redondo in following amounts and interest rates:

| Adversary Proceeding No. | Project | Amount awarded | Pre-judgment Interest |
|---|---|---|---|
| 03-0192 | Desvío Sur de Patillas | $643,545.77[3] | 6.5% from February 27, 2007 |
| 03-0194 | PR#2 Mayaguez | $10,402,009.66 | 6.5% from June 30, 1996 |
| 03-0195 | Dorado-Toa Alta | $912,874.23 | 6.5% from October 26, 1995 |

See In re Redondo, 411 B.R. at 90-95. The court also entered final *Judgments* (Carlo, B.J.)[4] in each of the adversary proceedings for each project upon the same *Decision and Order* (Docket No. 159).

On September 1, 2009, Redondo filed a *Motion for Amendment of Decision and Order and Judgment Nunc Pro Tunc* (Docket No. 161) to correct various typographical mistakes.

On September 10, 2009, PRHTA filed a *Motion to Amend or Alter Judgment or for New Trial Pursuant to Rule 9023 of Bankruptcy Procedure and Rule 59 (A) and (E) of Civil Federal Procedure* (Docket No. 165) contending that the court failed to discuss and apply the legal requirement for each of Redondo's causes of action, that the evidence presented at trial did not

the motions filed in the three cases include all adversary proceeding references. The legal issues in all three adversary proceedings are the same.

[2] The *Decision and Order* was published at Redondo Construction Corporation v. Puerto Rico Highway and Transportation Authority (In re Redondo), 411 B.R. 89 (Bankr. D.P.R. 2009).

[3] The original amount awarded for this project was $713,338.03. See In re Rodondo, 411 B.R. at 97. The amount was subsequently amended on February 11, 2012 (Docket No. 180).

[4] The final judgments for each adversary proceedings were entered in the following docket entries: Adversary Proceeding No. 03-0192 (Docket No. 160); Adversary Proceeding No. 03-0194 (Docket No. 130); and Adversary Proceeding No. 03-0195 (Docket No. 129). As confirmed by the First Circuit, "[w]ith the consent of the parties, the [bankruptcy] court issued a final judgment in the matters". In re Redondo, 678 F.3d at 120.

support the judgment, and that pre-judgment interest should not be allowed since it was not part of the contract between the parties.

On October 1, 2009, Redondo filed a *Reply to [PRHTA's] Motion to Amend or Alter Judgment or For New Trial* (Docket No. 174) rehashing most of the arguments in the court's *Decision and Order* and seeking pre-judgment interest under Article 1061 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3025 (Docket No. 174, p. 64).

On February 11, 2010, the court (Lamoutte, B.J.)[5] entered a *Decision and Order* (Docket No. 179)[6] denying PRTHA's *Motion to Amend or Alter Judgment or for New Trial Pursuant to Rule 9023 of Bankruptcy Procedure and Rule 59 (A) and (E) of Civil Federal Procedure* (Docket No. 165) for failure to show manifest error of law, newly discovered facts, previously unavailable evidence, or an intervening change in controlling law. On that same day, the court (Lamoutte, B.J.) also entered an *Amended Judgment* in Adversary Proceeding No. 03-0192 stating: "IT IS ORDERED that in ADV 03-0192, the PR Highway and Transportation Authority is liable to Redondo Construction in the amount of $643,545.77, with prejudgment interest at 6.5% from February 27, 2007" (Docket No. 180).

On March 4, 2010, PRTHA filed a *Notice of Appeal* (Docket No. 186) to the United States District Court for the District of Puerto Rico (the "District Court"). The appeals were originally docketed with the District Court as follows: Adversary Proceeding No. 03-0195, on May 10, 2010, as Civil Case No. 10-01373 (GAG); Adversary Proceeding No. 03-0194, on May 11, 2010, as Civil Case No. 10-01372 (SEC); and Adversary Proceeding No. 03-192, on May 25, 2010, as Civil Case No. 10-01371 (FAB). At the request of Redondo, Civil Cases Nos. 10-01373 and 10-01372 were consolidated with Civil Case No. 10-01371 (FAB).

On March 5, 2010, Redondo filed a *Motion for Execution of Judgments* (Docket No. 190). On March 19, 2010, PRHTA filed a *Motion for Stay of Execution of Judgment Pursuant to Federal Rule 8005 of Bankruptcy Procedure and in Opposition to Execution of Judgment*

---

[5] Upon the resignation of the Hon. Gerardo A. Carlo, the case was reassigned to the subscribing bankruptcy judge.
[6] The *Decision and Order* was published at 424 B.R. 29 (Bankr. D.P.R. 2010).

(Docket No. 196) claiming that denying the stay would result in the loss of the property/money subject of the appeal.

On March 30, 2010, the court (Lamoutte, B.J.) entered a *Decision and Order* (Docket No. 202) granting PRHTA's *Motion for Stay of Execution of Judgment Pursuant to Federal Rule 8005 of Bankruptcy Procedure and in Opposition to Execution of Judgment* (Docket No. 196) but did not require PRHTA to post a supersedeas bond.

On April 6, 2010, Redondo filed a *Motion to Alter or Amend Decision and Order* (Docket No. 204) arguing that the court incurred in a manifest error of law by not ordering PRHTA to post a supersedeas bond pursuant to Fed. R. Bankr. P. 7062(a).  On April 23, 2010, Redondo filed a *Motion for Granting of Unopposed Motions to Alter or Amend Order* (Docket No. 205).

On April 26, 2010, PRHTA filed a *Motion in O[p]position to [Redondo]'s Motion to Alter or Amend Decision and Order* (Docket No. 207) averring that ordering to post a bond would cause it irreparable harm and constitute a garnishment of public funds that is not permitted under Puerto Rico case law.

On October 25, 2010, the court (Lamoutte, B.J.) entered an *Order* (Docket No. 211) granting Redondo's *Motion to Alter or Amend Decision and Order* (Docket No. 204) and amending its March 31, 2010 O*rder* to state as follows: "as a condition for the stay of execution of the judgments pending the appeals the [PRHTA] will submit a supersedeas bond for the full amount of the judgments including pre-judgment interest, that is, in AP 03-0192 in the amount of $748,408.47; in AP 03-0194 in the amount of $19,306,724.45; and in AP 03-0195 in the amount of $1,734,486.05" (Docket No. 211, p. 6).

On April 15, 2011, the District Court entered a *Judgment* (Docket No. 277) in consolidated Civil Case No. 10-01371 affirming the bankruptcy court's *Decision and Order* (Docket Nos. 159 and 160) issued by Hon. Gerardo A. Carlo.

On May 31, 2011, the case was appealed to the First Circuit.  See Docket No. 278.

On May 11, 2012, the First Circuit issued an *Opinion* (Docket No. 279)[7] vacating the awards of Eichleay[8]-based overhead damages and remanding to permit recalculation of those awards using the percentage-of-direct-costs method where applicable and using Eichleay only in connection with work stoppages or delays (if any) of the type described. See In re Redondo, 678 F.3d at 124-125. In regards to the pre-judgment interest, the First Circuit "return[ed] the case to the bankruptcy court for a determination of whether pre-judgment interest is appropriate and, if so, at what rate and for what periods". Id. The First Circuit affirmed the *Decision and Order* (Carlo, B.J.) in all other matters, vacated the District Court's judgment to the extent necessary to allow for resolution of these items and remanded the case for further proceedings consistent with its *Opinion* (Docket No. 279).

On June 13, 2012, the District Court issued a *Mandate* remanding the case back to this court for further proceedings consistent with the First Circuit's *Opinion* (the "*Remand Mandate*", Docket No. 280).

On March 5, 2013, the court (Lamoutte, B.J.) held a hearing on remand and ordered the parties to file joint stipulations of fact and legal memoranda of law in accordance with the First Circuit's mandate. See Docket Nos. 296 (Audio File), 297 (Audio File), 298 (*Minute Entry*).

On April 17, 2013, the parties filed a *Joint Stipulation of Uncontested Facts and Separate Contested Facts* (Docket No. 305).

On May 20, 2013, Redondo filed a *Brief in Support of its Claims Against the Puerto Rico Highway and Transport Authority for Pre-Judgment Interest and Extended Home-Office Overhead Damages* (Docket No. 307) arguing that it is entitled to pre-judgment interest under Article 1061 of the Civil Code of Puerto Rico, 31 L.P.R.A. §3025. Redondo also claims to be entitled to extended home-office overhead damages for the three projects under the Eichleay

---

[7] The *Opinion* was published at 678 F.3d 115.
[8] The Eichleay formula is the one established in In re Eichleay Corp., 1960 ASBCA Lexis 1207, 1960 WL 538 (Armed Services Board of Contract Appeals 1960).

formula since the three contracts under which they were performed do not provide for the application of the percentage-of-direct-cost method[9].

On May 20, 2013, PRHTA filed a *Legal Memorandum Regarding Pre-Judgment Interest* (Docket No. 308) sustaining that no pre-prejudgment interest should be awarded against it because Redondo waived them by never having claimed them prior to that juncture.

On May 31, 2013, PRHTA filed a *Legal Memorandum Regarding Main Office Extended Overhead* (Docket No. 309) averring that although Redondo complied with two (2) of the requirements of the Eichleay formula, it failed to establish a third requirement, that is, that it was put on "standby". See Docket No. 309, p. 28.

On June 30, 2013, PRHTA filed a *Response to Redondo's Brief Regarding Pre-Judgment Interest and Extended Home-Office Overhead* (Docket No. 318) arguing that Redondo is not entitled to pre-judgment interest award because there was no finding of obstinacy by the bankruptcy court in its *Decision and Order* (Carlo, B.J., Docket No. 159) and that in any event, Redondo had waived pre-judgment interests under Article 1061 of the Civil Code of Puerto Rico. Alternatively, PRHTA avers that if Article 1061 is applicable, the interest rate should be the one established by the Financial Board of the Office of Financial Institutions at the time the *Judgment* was entered, not the 6% *per annum*. Lastly, PRHTA argues that the pre-judgment interest should accrue from the date of the judicial mandate of liquidation.

On July 1, 2013, Redondo filed a *Reply Brief to the Puerto Rico Highway and Transportation's Brief* (Docket No. 319) reaffirming that it is entitled to pre-judgment interest at 6% *per annum* from the date of substantial completion of the three projects pursuant to Article 1061 of the Civil Code. Redondo explicitly waived its claim to pre-judgment interest under Rule 44.3 of the Puerto Rico Rules of Civil Procedure by stating that "Rule 44.3 is inapplicable to the award of pre-judgment interest" and that "the applicable state law for the determination of prejudgment interest is Article 1061 of the Civil Code of Puerto Rico" (Docket

---

[9] The First Circuit's *Opinion* in these cases thoroughly distinguished the Eichleay formula from the percentage-of-direct cost method. See In re Redondo, 678 F.3d at 123-125, as subsequently discussed.

No 319, p. 7).  Redondo also restated that it is entitled to extended home-office overhead damages plus interest thereon at 6% *per annum* and insists that the use of the <u>Eichleay</u> formula is proper in these adversary proceedings because it meets the pertinent requirements.  It sustains that the evidence to support this formula has been accepted by the court and has gone unopposed.

<u>District Court's *Remand Mandate*</u>

The District Court remanded the instant case with the following mandates from the First Circuit:

*(1)      Pre-Judgment Interest:* In regards to pre-judgment interests, the First Circuit ruled and instructed as follows:

> When state-law claims (such as the contract claims at issue here) are adjudicated by a federal court, prejudgment interest is normally a matter of state law.
>
> …
>
> This brings us back to Puerto Rico pre-judgment interest rules. Before the bankruptcy court, the debtor urged in the alternative that it was entitled to pre-judgment interest under Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure. But this rule could not have provided a basis for the bankruptcy court's award of pre-judgment interest because the court made no finding regarding the Authority's temerity or obstinance.  See <u>Dopp v. Pritzker</u>, 38 F.3d 1239, 1252 (1st Cir. 1994).
>
> At oral argument in this court and in a post-argument letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), the debtor for the first time proposed two other possible bases for pre-judgment interest.  <u>See</u> P.R. Laws Ann. tit. 31, §§ 3025, 4591.  Neither of these statutes mentions pre-judgment interest as such. Moreover, neither of them was cited to the bankruptcy court, and the debtor has offered no plausible reason to believe that the court awarded pre-judgment interest under their aegis.
>
> The upshot is that uncertainty surrounds the debtor's putative entitlement to pre-judgment interest, the source (if any) of that entitlement, the rate of interest (if any) that should be used, and the proper pre-judgment period.  Consequently, we have no principled choice but to remand this case to the district court with instructions to vacate the award of pre-judgment interest and return the case to the bankruptcy court for a determination of whether pre-judgment interest is appropriate and, if so, at what rate and for what periods.  We take no view as to the outcome of this further inquiry.
>
> <u>In re Redondo</u>, 678 F.3d at 125-126.

*(2)    Extended Overhead Damages:* As mandated by the First Circuit, the District Court remanded and instructed the Bankruptcy Court as follows:

> Accordingly, we vacate the awards of <u>Eichleay</u>-based overhead damages and remand to permit recalculation of those awards using the percentage-of-direct-costs method where applicable and using <u>Eichleay</u> only in connection with work stoppages or delays (if any) of the type described above.
>
> …
>
> We add a caveat.  It is unclear from the record whether all of the project delays were the result of paid extra work. On remand, the bankruptcy court is free to determine whether the debtor sustained uncompensated periods of delay and, if so, whether <u>Eichleay</u> damages are appropriate for any such periods. In resolving this issue, the court should address the Authority's argument that Federal Circuit precedent bars <u>Eichleay</u> damages here because work on the three projects was never fully suspended.

<u>In re Redondo</u>, 678 F.3d at 124-125.

Applicable Law &amp; Analysis

*(A)    Waiver of Claims*

PRHTA argues that Redondo waived its rights to pre-judgment interest by not claiming them under Article 1061 of the Civil Code of Puerto Rico prior to the oral arguments at the before the First Circuit.  <u>See</u> PRHTA's *Legal Memorandum Regarding Pre-Judgment Interest* (Docket No. 308, pp. 11-12).  A review of the record shows otherwise.  Redondo expressly requested pre-judgment interest under Article 1061 in its *Reply to Motion to Amend or Alter Judgment or for New Trial Pursuant to Rule 9023 of Bankruptcy Procedure and Rule 59(A) and (E) of Civil Procedure* (Docket No. 174, p. 64).

The First Circuit has held that pre-judgment interest can be sought in post-trial briefs or motions.  <u>See</u> <u>In re Redondo</u>, 678 F.3d at 121-122 (allowing pre-judgment arguments for the first time on post-trial motions reasoning that "elsewise parties would be required to put the cart before the horse and argue about pre-judgment interest before the underlying issues of liability and damages have been resolved").  Thus, the court finds that Redondo preserved the right to claim pre-judgment interest under Article 1061 and did not waive such remedy.

Notwithstanding, Redondo waived pre-judgment interests under Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure when it stated that "Rule 44.3 is inapplicable to the award of pre-judgment interest" and that "the applicable state law for the determination of prejudgment interest is Article 1061 of the Civil Code of Puerto Rico" (Docket No 319, p. 7). Thus, Redondo expressly waived all pre-judgment remedies under said Rule. Therefore, the court will not consider any award under Rule 44.3(b).

*(B)      Pre-judgment Interests*

"Neither the Bankruptcy Code nor the United States Code contain a general statute granting pre-judgment interest. Therefore, pre-judgment interest is generally subject to the court's discretion depending on the equities of the case". <u>Lassman v. Keefe (In re Keefe)</u>, 401 B.R. 520, 526 (B.A.P. 1st Cir. 2009). In <u>In re Redondo</u>, 678 F.3d at 125, the First Circuit ruled that:

> [w]hen state-law claims (such as the contract claims at issue here) are adjudicated by a federal court, pre-judgment interest is normally a matter of state law. This case involves disputes between parties based in Puerto Rico over contracts executed and performed there. Those disputes were litigated in Puerto Rico, and the contracts at issue contain Puerto Rico choice-of-law provisions. We must therefore look to the law of Puerto Rico for the substantive rules of decision anent this contract case (and thus for the rule of decision concerning pre-judgment interest).

Therefore, the court will analyze the applicability of pre-judgment interests in these cases under Puerto Rico law.

In Puerto Rico, pre-judgment interests stem from two separate legal grounds: one is procedural and the other is substantive. Each serves a different purpose and provides different remedies for different conducts. The procedural pre-judgment interest penalty imposed by Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure responds to a party's obstinate conduct during the course of the litigation. <u>See Montañez v. U.P.R.</u>, 156 D.P.R. 395, 422-423 (2002) (Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure establishes the pre-judgment interest on the amount of the judgment that shall be imposed on the obstinate party). The substantive pre-judgment interest penalty is governed by Article 1061 of the Civil Code of Puerto Rico and

serves as an indemnity for damages. See Rivera v. Crescioni, 77 P.R.R. 43, 51, 77 D.P.R. 47, 55-56 (1954) (Article 1061 interest is considered "as an independent indemnity for damages, by way of penalty, for default in payment"). Also see C&A, S.E. v. Rivera González, 2012 PR App. LEXIS 4342 at **31-31, 2012 WL 6692144 at **10-11 (P.R. Ct. of Appeals 2012) (pre-judgment interest under Article 1061 is different from the interest afforded under Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure); Bird v. McCloskey, 2005 WL 808333 at *11, 2005 PR App. LEXIS 411 at *31 (P.R. Ct. of Appeals 2005) (distinguishing between pre-judgment interests from Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure and Article 1061 of the Civil Code). The application of these two remedies is not mutually exclusive. Redondo is no longer claiming pre-judgment interest on procedural grounds. It only claims pre-judgment interest on substantive grounds, that is, under Article 1061 of the Civil Code.

Article 1061 of the Civil Code of Puerto Rico states as follows:

Interest as indemnity for nonpayment of money

Should the obligation consist in the payment of a sum of money, and the debtor should be in **default**, the indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest.

Until another rate is fixed by the [Puerto Rico] Government, interest at the rate of six percent (6%) *per annum* shall be considered as legal. 31 L.P.R.A. § 3025 (emphasis added).

Although the official translation of the Article 1061 reads "Interest as indemnity for nonpayment of money" and requires a debtor to be in "default", the original Spanish version of the same Article reads as follows:

Intereses como indemnización en caso de **mora**

Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en **mora**, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.

Mientras que no se fije otro por el Gobierno se considerará como legal el interés del seis por ciento (6%) al año. 31 L.P.R.A. § 3025 (emphasis added).

There is a distinction between "default" and "mora", although in Puerto Rico they are often used interchangeably. The distinction is important because, when interpreting a Puerto Rico statute, Article 13 of the Civil Code mandates that "[i]n case of discrepancy between the English and Spanish texts of a statute passed by the Legislative Assembly of Puerto Rico, the text in which the same originated in either house, shall prevail in the construction of said statute". 31 L.P.R.A. § 13. Also see Esso Standard Oil v. P.R.P.A., 95 P.R.R. 754, 770, 95 D.P.R. 772, 788 (1968) (because the act in controversy was originated in the Puerto Rico Legislature in its Spanish text, interpretation of that text should prevail pursuant to Article 13 of the Puerto Rico Civil Code); In re Pérez Hernández, 487 B.R. 353, 366 fn. 5 (Bankr. D.P.R. 2013) (explaining the legal distinction of an inconsistent translation in a Puerto Rico statute). "Mora" in Spanish is defined as a delay in meeting an obligation, generally, the payment of a liquid amount due. Diccionario de la Real Academia Española, vigésima edición, Tomo II (1984). "Mora" in Latin translates into English as "delay". D.P. Simpson, Cassell's New Latin Dictionary, Func & Wangalls Co., 1960, p. 379. José Puig Brutau also defines "mora" as a "delay in the compliance of an obligation". Puig Brutau, Fundamentos de Derecho Civil, Bosch Editorial, Title I, Vol. II, 1985, pp. 412-413 (translation provided). Puig Brutau also distinguishes between a "delay" and a "faulty delay" ("retraso culpable"). Id. at 413. The "faulty delay" can be incurred by the debtor (*mora solvendi*) or by the creditor (*mora accipiendi*). Id. There is delay, as opposed to a definite default, when the performance of the obligation is not subject to an absolute essential deadline, that is, when the creditor's interest is not subjected to the performance of the obligation has an effect only in a determinate moment. Id. When there is an absolute essential deadline to comply with an obligation, the delay is equivalent to a "total default". Id. *Mora solvendi* (debtor's delay), which is subdivided into *solvendi ex persona* and *solvendi ex re*, usually requires a demand for compliance ("interpelación") by the creditor. Id. Also see Gema Diez-Picazo Giménez, La mora y la responsabilidad contractual, Editorial Civitas, 1st ed., 1996, pp. 534-538. In Puerto Rico, a delay ("mora") becomes a "default", within its legal context and consequences, pursuant to

Article 1053 of the Civil Code, 31 L.P.R.A. § 3017.  Thus, the court will analyze the application of Article 1061 of the Civil Code ("mora"/"delay") under the scope of the "default" requirements of Article 1053.

The Supreme Court of Puerto Rico has interpreted Article 1061 to mean that "in the absence of ... an express agreement the only interest which the principal of a loan accrues, after maturity of the obligation, is the legal interest at the rate of six percent *per annum* from the date on which the debtor is in default". Piovanetti v. Vivaldi, 80 P.R.R. 108, 113-114, 80 D.P.R. 108, 114 (1957).  Also see In re Redondo, 700 F.3d at 43, citing Viuda de Vázquez v. Vázquez Cintrón, 85 P.R.R. 266, 268, 85 D.P.R. 279, 283 (1962) (default in payment occurs "as of the date in which judicial or extra-judicial demand was made for payment"); De la Torre v. Navajas, 34 D.P.R. 442, 446 (1925) (upholding a judgment that condemned a party to pay legal interest at 6% in a collection of moneys suit from the date of extra-judicial demand); Reyes v. Banco Santander de P.R., 583 F. Supp. 1444, 1447 (D.P.R. 1984) ("According to the Civil Code, persons obliged to deliver or to do some act, are in default from the moment the creditor demands the fulfillment of the obligations, judicially or extra-judicially ... The non-payment results in the assessment of legal interest, under [31 L.P.R.A. §] 3025, in absence of a stipulation to the contrary, because the obligation was one to pay a sum of money").

Article 1061 is rooted in Civil Law.  See Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Authority, 674 F.2d 952, 958 (1st Cir. 1982).  Its purpose is the following:

> The creditor of a sum of money who claims an indemnity because of a delay in payment is not required to prove that such delay caused him a detriment; he has the right to receive interest for the delay "without being required to justify any loss." The reason for this is that he who expects his money on a certain day always suffers a detriment when he must wait for payment.  Money being a fruitful thing, easy to place, the creditor is always deprived of the revenue of his capital.  Id. at 958, citing Planiol, M., Treatise on the Civil Law, Vol. 2, Part 1265 (Louisiana State Law Institute trans. 11th ed. 1939, at pp. 158-159).

An award of pre-judgment interest under Article 1061 of the Civil Code does not require a determination of temerity or obstinacy.  See Atlas Roofing Contractors, Inc. v. Sistema Universitario Ana G. Méndez, 2011 WL 2117552 at *15, 2011 PR App. LEXIS 727 at *38

(P.R. Ct. of Appeals 2011); Bird v. McCloskey, 2005 WL 808333 at *11, 2005 PR App. LEXIS 411 at *31. Moreover, pre-judgment interests under Article 1061 may be awarded even when they have not been claimed in the complaint. See Fuentes v. Hull Dobbs Co., 88 P.R.R. 544, 553, 88 D.P.R. 562, 571 (1963); Bird v. McCloskey, 2005 WL 808333 at *11, 2005 PR App. LEXIS 411 at *31.

In the instant case, the dates of substantial completion for each project and Redondo's extra-judicial demands for payment to PRHTA were stipulated as follows:

| Project | Date of substantial completion | Date of extra-judicial demand (Date claim was submitted) |
|---|---|---|
| Desvío Sur de Patillas | March 18, 1994 | February 21, 1995 |
| PR#2 Mayaguez | November 1, 1993 | December 6, 2000 |
| Dorado-Toa Alta Project | September 5, 1995 | N/A[10] |

See Docket No. 305, pp. 4-5, ¶¶ 18-20, p. 9, ¶ 32, and p. 18, ¶ 72 (*Joint Stipulation of Uncontested Facts*). Redondo, however, argues that PRHTA's default in these projects goes further back than the stipulated dates of extra-judicial demand. It sustains that Article 1061 must be read in conjunction with Article 1053 of the Civil Code (Docket No. 307, p. 32), which states as follows:

Default; demand of creditor

Persons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfilment of their obligation, judicially or extra-judicially.

However, the demand of the creditor, in order that default may exist, shall not be necessary:

(1) If the obligation or law declares it expressly.

---

[10]The *Joint Stipulations of Uncontested Facts* does not show a stipulation as to the date that Redondo made an extra-judicial claim in regards to the Dorado-Toa Alta Project. See Docket No. 305, pp. 20-23, ¶¶ 78-93.

>    (2)    If by reason of its nature and circumstances it may appear that the fixing of the period within which the thing was to be delivered or the service rendered was a determinate cause to constitute the obligation.
>
> In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him.  From the time one of the persons obligated fulfills his obligation the default begins for the other party.  31 L.P.R.A. § 3017.

A mutual obligation, also called bilateral or reciprocal, is one where both parties have interrelated duties.  See Municipio v. Vidal, 63 D.P.R. 370, 375 (1945).  In other words, both contracting parties are creditors and debtors to one another.  See Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. II, Ed. Bosch, Barcelona, 1976, pp. 118-119.  Article 1544 of the Civil Code of Puerto Rico defines a contractor agreement as a "lease of works or services" where "one of the parties binds himself to execute a work or to render a service to the other for a specified price."  31 L.P.R.A. § 4013.  A "lease of works or services" constitutes a mutual obligation.  See Constructora Bauzá, Inc. v. García López, 129 D.P.R. 579, 592 (1991), citing Albaladejo, M., Comentarios al Código Civil y Compilaciones Forales, Tomo XX, Vol. 1, Jaén, Ed. de Derecho Unidas, 1980, p. 98; Berríos Rojas, C., Apuntes sobre el Contrato de Construcción, 13 Rev. Jur. U. Int. 461, 463 (1978-79).  The owner of the project has the obligation to pay as agreed and the contractor has the obligation to perform and deliver the project as agreed.  See Manuel Albaladejo, Derecho Civil II, Derecho de Obligaciones Vol. II, Los Contratos en Particular y las Obligaciones no Contractuales, 10th ed., 1997, Bosch, Barcelona, pp. 286 et seq.; Miguel A. Del Arco y Manuel Pons, Derecho de la Construcción, Ed. Hesperia, 1980, pp. 41-43.

In Master Concrete Corp. v. Comp. de Fomento Recreativo, 152 D.P.R. 616, 630 (2000), the Supreme Court of Puerto Rico ruled that in lease of works or services like the one in the instant case, when the contractor reaches the "substantial completion" of the project, it is entitled to payment minus the cost of repair of the imperfections.  Therefore, when the contractor substantially completes the project, it fulfills its obligation under the contract and has upon that moment the right to be paid.  Id. at 628-629.  The Supreme Court of Puerto Rico also

-14-

considered the equitable doctrine of unjust enrichment in reaching its conclusion. It reasoned that the unjust enrichment in favor of the owner to receive a substantially completed construction without paying for it must be prohibited. Id. at 629-630.

This court adopts the reasoning in Master Concrete Corp. and applies the same to the instant case, concluding that Redondo's substantial completion of the projects triggered the exception of the demand for payment provided in Article 1053 of the Civil Code to activate PRHTA's default. Also see José R. Vélez Torres, Derecho de Obligaciones, San Juan, Interamerican University School of Law, 1997, p. 262. As a result, PRHTA became in default upon the following stipulated dates of substantial completion:

| Project | Date of substantial completion |
| --- | --- |
| Desvío Sur de Patillas | March 18, 1994 |
| PR #2 Mayaguez | November 1, 1993 |
| Dorado-Toa Alta Project | September 5, 1995 |

See Docket No. 305 (*Joint Stipulation of Uncontested Facts*), pp. 4-5, ¶¶ 18-20.

PRTHA tepidly argues that "[t]he only cases Redondo could cite to show that in Puerto Rico there have been awards of interest under [A]rticle 1061, are from 1982 and 1991" and that "[b]oth of those cases were solved before the Government of Puerto Rico bestowed upon the Office of the Commissioner of Financial Institutions the faculty to establish what is the prevalent rate of interest upon judgments, which is also the rate of interest used under Puerto Rico's only substantive law that expressly regards pre-judgment interest (*i.e.* Rule 44.3 (b) of Civil Procedure)" (Docket No. 318, p. 12, ¶ 42). In other words, PRHTA seems to suggest that Article 1061 provides that the 6% pre-judgment interest is only applicable "[u]ntil another rate is fixed by the [Puerto Rico] Government" and that on October 25, 1988, the Commissioner of Financial Institutions adopted Regulation No. 78-1 ("Regulation No. 78-1"), which establishes

interests in final and binding judgments.  PRTHA apparently contends that Regulation No. 78-1 supersedes the 6% established in Article 1061.  The court is not moved by such argument.

Puerto Rico's Act No. 78, enacted on July 11, 1988, amended former Rule 44.3 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. III R. 44.3 (1979), to delegate onto the Office of the Financial Institutions Commissioner the authority to implement the necessary regulation to establish the pre-judgment and post-judgment interests afforded in Rule 44.3, which had until then provided a fixed interest rate of 12%.  See Gutiérrez Calderón v. A.A.A., 167 D.P.R. 130, 136-140 (2006) (explaining the purpose of Act No. 78 enacted on July 11, 1988 and its effect on Rule 44.3 of the Puerto Rico Rules of Civil Procedure); Section 1 of Regulation 78-1; Article 2 of Puerto Rico's Act No. 78 enacted on July 11, 1988, p. 360.  Regulation No. 78-1 only governs the pre-judgment interest afforded in Rule 44.3 of the Puerto Rico Rules of Civil Procedure, not the one afforded in Article 1061 of the Civil Code.  Therefore, the court concludes that the 6% *per annum* is the applicable interest rate for pre-judgment interest under Article 1061.  Also see C&A, S.E. v. Rivera González, 2012 PR App. LEXIS 4342 at **31-31, 2012 WL 6692144 at **10-11 (applying the legal interest afforded in Article 1061 at the rate of 6% *per annum*).

Consequently, Redondo is entitled to pre-judgment interest to be calculated at a 6% interest *per annum* with an accrual period starting from the stipulated dates of substantial completion until PRHTA's final payment on the principal of the principal amounts for each project.

*(C)    Extended Overhead Damages*

"[PRHTA] challenge[d on appeal] only the award of home-office overhead, not the award of job-site overhead. Consequently, all references herein to extended overhead damages should be read as referring exclusively to home-office overhead." In re Redondo, 678 F.3d at 123, fn. 4.

The First Circuit defined "extended overhead damages" as those that "compensate a contractor for unabsorbed home-office expenses that accrue during a delay caused by the

owner." In re Redondo, 678 F.3d at 123. "Overhead is commonly defined as those costs which are expended for the benefit of the business as a whole and which usually accrue over time … overhead costs are therefore not directly attributable to specific contracts, for if they were, they would constitute direct costs." Aircraft Gear Corporation v. Kaman Aerospace Corporation, 875 F. Supp. 485, 495 (N.D. Ill. 1995). Also see Southwestern Engineering Co. v. Cajun, 915 F.2d 972, 978 (5th Cir. 1990) ("extended overhead is a concept unique to construction contracting and is defined as the additional costs incurred when a job's performance period is prolonged"). Hence, home-office overhead expenses, unlike the direct costs of labor, materials or equipment, are not incurred solely for a particular project. They typically include the cost of accounting and payroll services, general insurance, salaries of upper-level management and marketing costs. Home-office overhead is an actual dollar cost that is an essential part of a contractor's cost of doing business. See William Schwartzkopf and John J. McNamara, Calculating Construction Damages, Aspen Law & Business, 2nd ed., 2001,§ 602, p. 124. The rationale for compensating a contractor for unabsorbed home-office expenses that accrue during a delay is the following:

> when completion of a project is delayed, the contractor continues to incur home-office costs during the delay period, and extended overhead damages offset those costs **when the delay is caused by the owner**. In re Redondo, 678 F.3d at 124 (emphasis added).

When a project is extended beyond the time originally agreed for its execution by reason of delays due to the action or inaction of the owner, the costs incurred by the contractor after the original date set for the completion of the project are not included as part of the risks assumed by the contractor and the contractor has the right to be compensated for all damages and increased costs incurred. See U.S. Steel Corp. v. Missouri Pacific Railroad, 668 F.2d 435, 441 (8th Cir. 1982).

To calculate an award for extended overhead damages, the First Circuit distinguished between (a) projects where the delay is due to "necessary but unanticipated work" and (b) projects where the delay does not arise from a need to perform extra work. In re Redondo, 678

-17-

F.3d at 124.  When a project is delayed due to "necessary but unanticipated work" for which the contractor is entitled to compensation, extended overhead is calculated as a percentage of the direct costs of the additional work.  "This percentage-of-direct-costs approach comports with standard practice in the construction industry under which a contractor normally charges an owner a percentage of a project's direct costs to cover its overhead."  Id. at 124.  Conversely, when a project's delay does not arise from a need to perform extra work, for instance, when the owner causes a total work stoppage, the percentage-of-costs approach would deny the contractor any overhead damages for the delay period.  Id.  In those instances, courts use the Eichleay formula, which "calls for multiplying the average daily overhead costs allocable to a project by the number of days that the project is delayed."  Id.

On remand, the First Circuit instructed as follows:

In the case at hand, the bankruptcy court employed Eichleay to calculate [Redondo's] extended overhead damages.  See Redondo I, 411 B.R. at 95, 108. But the court mixed apples and oranges; it used Eichleay across the board even though it found that at least some of the project delays were attributable to extra work for which the debtor was compensated. See, e.g., id. at 95, 97, 104-05. For those delays, extended overhead should have been awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders.  See C.B.C. Enters., Inc. v. United States, 978 F.2d 669, 675 (Fed. Cir. 1992) ("[I]t is inappropriate to use the Eichleay formula to calculate home office overhead for contract extensions because adequate compensation for overhead expenses may usually be calculated more precisely using a fixed percentage formula.").

The bankruptcy court gave no reason for eschewing the conventional percentage-of-direct-costs calculation as a measure of overhead damages in those instances, and no compelling reason is apparent on the face of the record. Without more precise findings or a better explanation, this portion of the awarded damages cannot be allowed to stand. Accordingly, we vacate the awards of Eichleay-based overhead damages and remand to permit recalculation of those awards using the percentage-of-direct-costs method where applicable and using Eichleay only in connection with work stoppages or delays (if any) of the type described above.

The direct costs, of course, are a matter of proof. The applicable percentage should be that used in connection with the original contracts (presumably specified in the contract documents).

We add a caveat. It is unclear from the record whether all of the project delays were the result of paid extra work. On remand, the bankruptcy court is free to determine

whether the debtor sustained uncompensated periods of delay and, if so, whether <u>Eichleay</u> damages are appropriate for any such periods. In resolving this issue, the court should address the [PRHTA]'s argument that Federal Circuit precedent bars <u>Eichleay</u> damages here because work on the three projects was never fully suspended. See <u>P.J. Dick Inc. v. Principi</u>, 324 F.3d 1364, 1371 (Fed. Cir. 2003).

<u>In re Redondo</u>, 678 F.3d at 124-125 (footnote omitted).

The mandated task of this court is to find whether the delays in the three projects were due to "necessary but unanticipated work" (to which the court must apply the percentage-of-direct-costs approach) or whether the delay did not arise from a need to perform extra work (to which the court must apply the <u>Eichleay</u> formula)[11]. The query further translates into finding if Redondo was compensated for the extra work performed caused by the delay. See <u>In re Redondo</u>, 678 F.3d at 124. If the extra work was compensated, then "the extended overhead should [be] awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders". <u>Id.</u> The stipulations filed by the parties are not clear as to whether Redondo was compensated or not for the extra work. PRTHA sustains that "all the extension of times granted … to Redondo in the three projects were the result of 'such additional work' (*i.e.*, the additional time is granted in the change order or extra work documents signed by the parties)" which warrants the use of the "percentage-of-direct-costs method". PRHTA's *Legal Memorandum Regarding Main Office Overhead*, Docket No. 309, p. 14, ¶¶ 23-24. Redondo does not address the "percentage-of-direct-costs method" and instead focuses its arguments towards the application of the <u>Eichleay</u> formula[12].

Conversely, if the extra work performed by Redondo in the three projects was not compensated, then the court must apply the <u>Eichleay</u> formula if its basic requirements are met. <u>In re Redondo</u>, 678 F.3d at 124.

---

[11] The court will only consider the arguments relevant to the First Circuit's express mandate.

[12] In its *Brief in Support of Its Claims Against [PRHTA] for … Extended Home-Office Overhead Damages*, Redondo avers that "[t]he parties have agreed that in the case of damages for delay, the recovery of additional overhead in a public contract setting is governed by the standards adopted in <u>In re Eichleay</u>" (Docket No. 309, p. 37). Redondo did not provide any reference whatsoever to that stipulation and the court could not find it in Docket No. 305 (*Joint Stipulations*). In fact, the only reference to the <u>Eichleay</u> case in the *Joint Stipulations* by the parties (Docket No. 305) is found in p. 10, ¶ 39, and only to state that "[i]n computing the extended general and homeoffice overhead, Eng. Mercado also used the <u>Eichleay</u> formula".

-19-

In P.J. Dick Inc. v. Principi, 324 F.3d at 1370, the Court of Appeals for the Federal Circuit established a three-prong test for the application of the Eichleay formula:

> First, the contractor must show that the government-caused delay was not only substantial but was of an indefinite duration.
> …
> Second, the contractor must show that during that delay it was required to be ready to resume work on the contract, at full speed as well as immediately.
> …
> Third, the contractor must show effective suspension of much, if not all, of the work on the contract.

Once the contractor has proven these three elements, the "burden of production shifts to the government to show that it was not impractical for the contractor to take on replacement work and thereby mitigate its damages." Id. at 1370. "If the government meets its burden of production, however, the contractor bears the burden of persuasion that it was impractical for it to obtain sufficient replacement work." Id.

In the instant case, Redondo sustains that it complies with all three requirements. PRHTA acknowledges that the first and third requirements were established during the trial (Carlo, B.J.) and only contests that Redondo remained on standby during the delay. See PRHTA's *Legal Memorandum Regarding Main Office Extended Overhead* (Docket No. 309, p. 28, ¶ 52: "Redondo's compliance with … two (2) requirements for the application of the Eichleay formula was established by the … court in its *[Decision] and Order* [referring to the first and third requirements established in Principi, *supra*]"). In other words, PRHTA concedes that it caused delay in the projects and that Redondo incurred in additional expenses because of the delay. In fact, Judge Carlo expressly determined that:

> [Redondo] has proven the disruptions in the work performed and therefore established an entitlement to inefficiency claims against PRHA. There was a reduction in the expected productivity of labor and equipment, which went well beyond the normal range of disruption inherent in the construction process. These delays were caused solely by compensable events within the control of [PRHTA].

> In re Redondo, 411 B.R. at 105.

PRTHA asseverates, however, that the *Decision and Order* (Carlo, B.J.) never determined that Redondo remained on "standby" during that delay and that,by its own admission, Redondo worked continuously throughout the entire duration of the three projects.  In other words, PRHTA argues that a determination of "standby" is the *sine qua non* requirement for an award for overhead damages under the Eichleay formula and that Redondo was never on "standby" because it never stopped working.  In its own words, PRHTA contends as follows:

> In regards to the mandated application of the Eichleay formula, as there was no delay period other than that created by the additional work there is no need to employ[] such method. Furthermore, even if Redondo points out to the record which delay periods were not created by the additional work, then the absence of its standby makes the formula inapplicable and hence no compensation to be granted. (Docket No. 309, p. 15, ¶ 26).

PRHTA proposes that for the Eichleay formula to be applied, there must be a "total stoppage of work" and that in the instant case, "Redondo is unable to point out to the record where … 'partial stoppages' (much less total stoppages) were evidenced before this … court" (Docket No. 309, p. 12, ¶ 18).  Redondo replies that it "continued work on the projects because the PRHTA represented that at their end, [Redondo] would be paid for its extra work."  Redondo's *Brief in Support of its Claims … for Home-Office Extended Overhead* (Docket No. 307, p. 39).  Redondo also argues that Judge Carlo accepted Redondo's testimony that the policy of the PRHTA's executive director, Dr. González, was to deal with the claims for extended overhead at the conclusion of the contracts, that the PRHTA's officers represented that this would be dealt with at another time, at another level, and that Redondo relied on these representations and continued working under those assumptions.  See Redondo's *Brief in Support of its Claims … for Home-Office Extended Overhead* (Docket No. 307, p. 39).  Redondo also claims that it could not accept any other work or project because it was being strung along by PRHTA.  See Redondo's *Brief in Support of its Claims … for Home-Office Extended Overhead* (Docket No. 307, p. 39).  Based on the foregoing, Redondo sustains the Eichleay formula applies to "partial suspensions", not just "total suspensions", and hence, "if some components of a contractor's business are committed to one project and cannot be committed to another project, then the

contractor's business is at a practical standstill" (Redondo's *Brief in Support of its Claims ... for Home-Office Extended Overhead*, Docket No. 307, p. 40). Redondo further argues that it "was expected to return to work immediately when and as the foregoing conditions were rectified and resolved", that "PRHTA could have established a schedule for when [Redondo] could leave the sites and found work elsewhere, to return when the PRHTA addressed and solved many problems" and that "PRHTA cannot be heard to complain when it did not do that, but instead insisted that RCC remain on the jobs, ready to resume work at any time" (Redondo's *Brief in Support of its Claims ... for Home-Office Extended Overhead*, Docket No. 307, p. 41).

The "standby" requirement for the application of the Eichleay formula is essential for the disposition in the instant adversary proceedings, especially since one of the main considerations in the First Circuit's *Opinion* is that "[d]espite the plethora of problems [in the projects] … the record contains no evidence that the work on any of [them] was ever suspended or that [Redondo] was placed on standby for any period of time." In re Redondo, 678 F.3d at 119-120.

Because the parties have stipulated that Puerto Rico law is controlling[13], the court must first consider how Puerto Rico courts have interpreted the Eichleay "standby" requirement. This court has not found any case where the Supreme Court of Puerto Rico has interpreted the Eichleay formula. The Court of Appeals of Puerto Rico, however, has been faced with Eichleay controversies and has repeatedly applied the formula and its requirements. See *e.g.* Las Piedras Constr. Corp. v. Autoridad de Carreteras y Transportación de P.R., 2007 PR App. LEXIS 1922, 2007 WL 2381348 (P.R. Ct. of Appeals 2007); Constructora I. Meléndez, S.E. v. Autoridad de Carreteras y Transportación de P.R., 2005 PR App. LEXIS 2705, 2005 WL 2837530 (P.R. Ct.

---

[13]¶ 22 of the *Joint Stipulations of Uncontested Facts* reads as follows:

> The master contract for each of the three (3) projects is contained in a contract book that incorporates as an integral part thereof the award, the bid documents, the plans and specifications and general provisions. It also incorporates the Puerto Rico Department of Transportation and Public Works and Highway Authority's "Standard Specifications for Road and Bridge Construction of 1989", known as the "Blue Book". All three (3) contracts state at page 2 paragraph 4 that "**[t]he parties hereto agree that the contract in all things be governed by the laws of Puerto Rico**". (Docket No. 305, p. 5, ¶ 22, emphasis added).

-22-

of Appeals 2005); <u>Del Valle Group, S.E. v. Municipio de Cataño</u>, 2009 PR App LEXIS 3711, 2009 WL 5736731 (P.R. Ct. of Appeals 2009); <u>C&A, S.E. v. Rivera González</u>, *supra*; <u>Belmec Construction, Inc v. Trujillo Alto Metal Corp.</u>, 2010 PR App. LEXIS 2645, 2010 WL 4791504 (P.R. Ct. of Appeals 2010). In <u>Del Valle Group, S.E. v. Municipio de Cataño</u>, *supra*, the Court of Appeals of Puerto Rico faced the particular controversy of whether the "standby" requirement for the application of the <u>Eichley</u> formula implies "total work stoppage" or whether it also includes "partial work stoppage". In that case, a special master was appointed by the Puerto Rico Court of First Instance ("PR Court of First Instance"), Superior Court of Bayamón, pursuant to Rule 41 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. III R. 41 (1979)[14]. After receiving the evidence submitted by the parties, the special master determined that the "standby" requirement admitted both "partial" and "total" work stoppage. The PR Court of First Instance rejected the report made by the special master and dismissed the case. On appeal, the Puerto Rico Court of Appeals reversed the judgment by the Court of First Instance and remanded it with specific instructions to consider the merits of the report prepared by the special master. 2009 PR App LEXIS 3711 at **31-32, 2009 WL 5736731 at *11-12. No further history as to the ultimate outcome of that case is available. Hence, <u>Del Valle Group, S.E. v. Municipio de Cataño</u>, *supra*, is not enlightening as to the ultimate outcome of that controversy. Therefore, because reported Puerto Rico case law does not address this particular quandary, the court turns to the *Opinion in Reconsideration* of the seminal case of <u>Eichley</u>, 1960 ASBCA LEXIS 1001, 1960 WL 684, 61-1 B.C.A. (CCH) P2894 (A.S.B.C.A. 1960), where the Armed Services Board of Contract Appeals clarified the type of suspension that constitutes "standby":

> Performance of the contracts was at no time completely suspended and the delays were not continuous. One item of work would be suspended, then another and so on through an extended series of suspensions. The partial suspensions were lifted at innumerable, varying intervals over a prolonged period of time with the issuance of

---

[14] Fed. R. Civ. P. 53 is the federal counterpart of Rule 41 of the Puerto Rico Rules of Civil Procedure, *supra*, and its subsequent amendment 32 L.P.R.A. Ap. V R. 41 (2009).

the numerous modifications providing for changes in the contracts. Under these circumstances it would not have been prudent or practical for appellant either to risk the layoff of Home Office personnel or facilities, or, on the other hand, to absorb personnel and facilities so made idle by taking on new commitments.

Moreover, in Capital Electric Co. v. United States, 83-2 B.C.A. (CCH) P 16,548, at 82,302, 1983 GSBCA LEXIS 86, 1983 WL 7572(GSBCA 1983), rev'd on other grounds, 729 F.2d 743 (Fed. Cir. 1984), the General Services Administration Board of Contract Appeals applied the Eichleay formula to compensate the uncertainty caused by suspension, disruption or delay of contract performance because, although its work was never completely stopped, the contractor's work was "unreasonably delayed and disrupted" for 302 days such that it "was never able to man the job as planned." The key element of uncertainty, engendered by the fact of disruption, suspension or delay of contract performance, has been present whenever courts or the Boards of Contract Appeals have permitted extended home office overhead to be calculated under the Eichleay formula. See e.g. Weaver-Bailey Contractors, Inc. v. United States, 19 Cl. Ct. 474, 477 (1990) (government's inaccurate estimate caused delay that was unforeseeable and beyond control of the contractor); A.A. Beiro Constr. Co., 91-3 B.C.A. (CCH) P 24,149, at 120,844 (ENGBCA 1991) (duration of delays uncertain so that contractor could not divert resources to other work); Cieszko Constr. Co., 88-1 B.C.A. (CCH) P 20,223, at 102,417 (ASBCA 1987) (contractor put off-site for six weeks while government procured appropriate doors; government caused further delays due to sludge removal); Shirley Contracting Corp., 85-1 B.C.A. (CCH) P 17,858, at 89,399-400 (ASBCA 1984) (lengthy suspension of work because of government inability to authorize changes due to lack of funds meant that contractor was uncertain as to when work might resume); Excavation-Constr., Inc., 82-1 B.C.A. (CCH) P 15,770, at 78,067-68 (ENGBCA 1982) (virtually impossible to trace directly the effect of each separate delay that reached a total of 66 days); Savoy Constr. Co., 85-2 B.C.A. (CCH) P 18,073, at 90,723 (ASBCA 1985) (changes at the beginning of the project continued sporadically throughout the period of construction causing "unknown length of delays"). Also see Williams Enters., Inc. v. Sherman R. Smoot Co., 938 F.2d 230 (D.C. Cir. 1991) (private contractor allowed to recover

-24-

overhead expenses from subcontractor due to delay caused by subcontractor's negligence). In all of these cases, "when disruption, suspension or delay caused by the government has reduced the stream of direct costs in a contract, it [was] appropriate to use the Eichleay formula to calculate extended home office overhead instead of the fixed percentage rate formula because the latter would not adequately compensate the contractor for extended home office overhead." C.B.C. Enterprises v. United States, 978 F.2d at 674.

Thus, the court concludes that contrary to PRHTA's assertion, the "standby" requirement of the Eichleay formula is met if the evidence shows that the owner submitted the contractor to total or partial suspensions, delays or disruptions that unreasonably delayed and disrupted the contractor such that it was never able to man the job as planned.

Because the *Joint Stipulations* filed by the parties do not address whether the extra work performed by Redondo in the three projects were the result of "necessary but unanticipated work" or whether the delay did not arise from a need to perform extra work as mandated by the First Circuit, the court orders the parties to file additional stipulations to that effect or separate briefs making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the extra work performed by Redondo in the three projects was the result of "necessary but unanticipated work" and the percentage-of-direct-costs method is applicable, the parties shall stipulate and/or brief the court on the percentage to be applied to the corresponding costs (via change orders and/or extra work orders[15]) making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the Eichleay formula is to be applied, the court further orders the parties to stipulate the calculation of such damages and/or file separate briefs that include specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

---

[15] See In re Redondo, 678 F.3d at 124.

*(D)      Interest on Damages*

Redondo also seeks the application of pre-judgment interests for overhead damages. See Docket No. 307, p. 44 (seeking compensation for the "extended home-office overhead damages yet to be paid and their corresponding interest"). Redondo did not state the legal ground to support such request and PRHTA did not address it.

As stipulated by the parties, Puerto Rico law is controlling in these three adversary proceedings (Docket No. 305, p. 5, ¶ 22). The only case addressing this issue is C&A, S.E. v. Rivera González, 2012 PR App. LEXIS 4342 at **11-17, 2012 WL 6692144 at **4-6, where the Court of Appeals of Puerto Rico affirmed a judgment from the PR Court of First Instance that awarded pre-judgment interests to overhead damages under Article 1061 of the Civil Code of Puerto Rico. "Where a jurisdiction's highest court has not spoken on a precise issue of law … [federal courts] look to analogous state court decisions, persuasive adjudications by courts of the states, learned treatises, and public policy considerations ... in order to make an informed prophecy of how the Puerto Rico Supreme Court would rule." Rodríguez-Surís v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). Also see Pérez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 55 (1stCir. 1998); Isla Nena Air Servs. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1stCir. 2006).

The court will follow the Court of Appeals of Puerto Rico in C&A, S.E. v. Rivera González, *supra*, and will award pre-judgment interest to home-office overhead damages under Article 1061 of the Civil Code of Puerto Rico.

                                              Conclusion

Upon the District Court's *Remand Mandate* (Docket No. 280), and based on the foregoing, the court concludes and orders as follows:

(a)      Pre-judgment interest: Redondo is entitled to 6% pre-judgment interest under Article 1061 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3025, with an accrual period starting from the stipulated dates of substantial completion until PRHTA's final payment on the principal of the principal amounts for each project. Partial judgment will be entered accordingly.

(b)    Extended Overhead Damages: Because the *Joint Stipulations* filed by the parties do not address whether the extra work performed by Redondo in the three projects were the result of "necessary but unanticipated work" or whether the delay did not arise from a need to perform extra work as mandated by the First Circuit, the court orders the parties to file additional stipulations to that effect or separate briefs making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the extra work performed by Redondo in the three projects was the result of "necessary but unanticipated work" and the percentage-of-direct-costs method is applicable, the parties shall stipulate and/or brief the court on the percentage to be applied to the corresponding costs (via change orders and/or extra work orders) making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the Eichleay formula is to be applied, the court further orders the parties to stipulate the calculation of such damages and/or file separate briefs that include specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

Stipulations and/or briefs shall be filed within 30 days.

SO ORDERED.

In San Juan, Puerto Rico, this 10th day of January, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge

-27-